**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **CAROLYN P. SANDERS** | **CIVIL ACTION** |
| **VERSUS** | **NO:   24-1921** |
| **COMMUNITY ACADEMIES OF NEW ORLEANS** | **SECTION: "KWR"** |

## ORDER

Before the Court is Defendant, Community Academies of New Orleans, Inc. ("CANO"), **Motion for Summary Judgment (R. Doc. 24)**, seeking summary judgment dismissing Plaintiff's sole cause of action under the Americans with Disabilities Act ("ADA"). The Motion is Opposed. R. Doc. 32.

### I.      Introduction

#### A.  Factual Background

Community Academies of New Orleans ("CANO") operated Lafayette Academy ("Lafayette Academy") Charter School during the 2022-23 school year. R. Doc. 24-2, *Uncontested Facts*, 1. Lafayette Academy housed its lower school grades (Pre-K-4th) at Leah Chase Campus located on South Carrollton Street in New Orleans and its middle school grades (5th-8th grade) at Paul Dunbar Campus located on Live Oak Street in New Orleans. R.doc. 24-2, *Uncontested Facts*, 5. Plaintiff Carolyn Sanders was an at-will employee who worked as an ELA Interventionist and Testing Services Coordinator at the Paul Dunbar Campus. *Id.*, *Uncontested Facts,* 2-4. Because of a projected drop in students, CANO began to downsize for the 2023-24 school year by combining the lower and middle school to operate out of one building. *Id.*, *Uncontested Facts,* 5-7.

As a result of the downsizing decision, CANO eliminated eight positions which affected Sanders' employment. *Id.*, *Uncontested Facts*, 9-11. CANO states that it kept two interventionists

who were more experienced or had greater tenure than Sanders. *Id.* CANO additionally decided to reduce its testing coordinators from two employees to one employee. *Id.* CANO states that there were no other positions Sanders was qualified for as the available positions were limited to an IT Tech, sixth grade science teacher, or kindergarten paraprofessional. Id. *Uncontested Facts,* 10-12.

On March 5, 2023, Sanders requested permission to immediately take FMLA time because of vision issues and joint pain. R. Doc. 24-3 at 2. Sanders was granted leave pursuant to the Family Medical and Leave Act ("FMLA") from February 27, 2023, through May 19, 2023. R. Doc. 1 at 4. Sanders was also approved for unpaid leave ("LWOP") from March 6, 2023, through May 12, 2023. *Id.*

One week before Sanders leave expired, Dr. Edward Gaber, Sanders' physician, notified CANO that Dr. Thomas Francavilla, Sanders' neurosurgeon, would be in best interest to indicate when she would return to work. R. Doc. 24-3 at 2. Sanders did not seek treatment from Dr. Francavilla until over a month after request for leave. *Id.* Two days before her leave expired, Dr. Francavilla wrote to CANO noting that Sanders would not be able to return to work "until further notice." *Id.* On June 2, 2023, Dr. Francavilla noted lumbar radiculopathy as Sanders' diagnosis but informed CANO that Sanders was expected to return to full function by August 31, 2023. *Id.* CANO claims that Sanders' medical documentation did not indicate that Sanders was disabled or needed an accommodation to successfully perform her duties as an Interventionist. R. Doc. 24-2, *Uncontested Facts,* 18.

On June 26, 2023, CANO contacted Sanders and advised her that her FMLA was exhausted and as of July 1, 2023, Sanders' employment would end. *Id.*, *Uncontested Facts*, 22. At the end of the 2023-24 school year Lafayette Academy permanently closed. *Id.*, *Uncontested Facts*, 24.

2

### B.  The EEOC charge

Sanders filed a charge against CANO with the Equal Employment Opportunity Commission ("EEOC") on August 1, 2023. R. Doc. 1 at 5. See R. Doc. 1-1 at 1.  She received a Notice of Right to Sue letter on June 3, 2024. *Id.*

### C.  The Lawsuit

On August 1, 2024, Sanders filed her lawsuit pursuant to the Americans with Disabilities Act ("ADA"), alleging that she was subject to discrimination by CANO for failing to accommodate her ability. R. Doc. 1 at 4. Sanders claims that her lumbar radiculopathy condition[1] has left her unable to stand for long periods of time, walk upstairs, and lift heavy objects. R. Doc. 1 at 4. Sanders contends that she applied for long term disability on May 29, 2023, pursuant to her doctor submitting a request that she be given an additional ninety days away from work. R. Doc. 1-1 at 1. Sanders alleges that she later received an email from CANO on June 28, 2023, informing her that she will be discharged even though her long-term disability application was still pending.  *Id. See* R. Doc. 1-1 at 18. Sanders alleges that CANO did not offer severance pay, failed to pay for the summer pay periods, and did not submit a report for unemployment benefits. R. Doc. 1 at 4.

CANO denies that Ms. Sanders was subjected to discrimination and contends that she has failed to state a claim upon which relief may be granted, among other affirmative defenses. R. Doc. 12 at 1-3. See R. Doc. 1-1 at 20. CANO contends that Ms. Sanders was an at-will employee, subject to discharge at any time for any lawful reason, and that her position was eliminated as part

---

[1] Radiculopathy describes a range of symptoms produces by the punching or damaging of a nerve root in the spinal column, and chronic lumbar radiculopathy is also referred to as sciatica since the nerves that make up the sciatic nerve are often involved. https://www.hopkinsmedicine.org/health/conditions-and-diseases/radiculopathy

of a reduction in force that had nothing to do with her alleged medical conditions. Id. at 7-8. CANO

further asserts that Sanders had not informed them of any medical condition, disability, or request

for accommodations prior to taking leave in March 2023. R. Doc. 24-3 at 2.

## II.    **Standard of Review**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317,

322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986) (citing FED. R. CIV. P. 56(c)); *Little v. Liquid Air

Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994). A fact is "material" if resolving that fact in favor of one

party could affect the outcome of the suit.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986); *Poole v. City of Shreveport*, 691 F.3d 624, 626-27 (5th Cir. 2012).

When assessing whether a dispute as to any material fact exists, the Court considers "all of

the evidence in the record but refrains from making credibility determinations or weighing the

evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th

Cir.2008).  All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot

defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d

at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for

the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at

trial, the moving party "must come forward with evidence which would 'entitle it to a directed

verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d

1257, 1263–64 (5th Cir.1991) (citation omitted). The nonmoving party can then defeat the motion

by either countering with sufficient evidence of its own, or "showing that the moving party's

4

evidence is so sheer that it may not persuade the reasonable factfinder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325, 106 S. Ct. 2548. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324, 106 S. Ct. 2548. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See*, *e.g., id*. at 325, 106 S. Ct. 2548; *Little*, 37 F.3d at 1075.

## III.    <u>Analysis</u>

CANO contends that Sanders' lawsuit should be dismissed because she cannot establish that she was a qualified individual with a disability and/or regarded by CANO as having any purported disability. R. Doc. 24-3 at 2. CANO contends that none of the communications by either Sanders or her treating physician outline any disabling condition. *Id.*  CANO contends that Sanders only communicated that she needed time off because of vision and joint pain.  *Id.*

On March 5, 2023, Sanders contends that she emailed HR Director Ms. Knight and her immediate supervisor Principal Dominique Zenon stating she needed to take some time off due to impending eye surgery and low-back pain.  R. Doc. 32 at 1. Sanders contends that she submitted written documentation of her condition and requested reasonable accommodations. *Id.* Sanders contends that on May 31, 2023, her treating neurosurgeon Dr. Francavilla submitted a letter to CANO and its insurer indicating that her condition would require reasonable accommodations and referred her to a pain management specialist for follow up care. *Id.* at 2.

A plaintiff seeking to establish a prima facie claim of discrimination by an employer under the ADA must prove that: (1) they have a disability; (2) they are a qualified individual; and (3) they were subjected to an adverse employment decision on account of their disability. *See Cole v. Orleans Parish Sheriff's Office*, No. 11-2211, 2011 WL 5119058 at *3-5 (E.D. La. Oct. 28, 2011) (Roby, M.J.). Additionally, to prevail on a claim for failure to make reasonable accommodations for a disability, the plaintiff must show that: (1) they are a qualified individual with a disability; (2) the disability and its consequential limitations were known by the employer, and (3) the employer failed to make reasonable accommodations for the plaintiff's known limitation. *See Moss v. Harris County Constable Precinct One*, 851 F.34 413, 417 (5th Cir. 2017).

One way a plaintiff may establish a case of discrimination under the ADA is through direct evidence. *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir.1995). "Direct evidence is evidence which, if believed, proves the fact of intentional discrimination without inference or presumption." *Portis v. First Nat. Bank of New Albany, Miss.*, 34 F.3d 325, 328–29 (5th Cir.1994) (quoting *Brown v. East Miss. Elect. Power Ass'n*, 989 F.2d 858, 861 (5th Cir.1993)) (internal quotation marks omitted).

"[D]irect evidence includes any statement or written document showing a discriminatory motive on its face." Id. at 329 (citing *Vaughn v. Edel,* 918 F.2d 517, 521 (5th Cir.1990); and *Miles v. M.N.C. Corp.,* 750 F.2d 867, 870 (11th Cir.1985)). When there is direct evidence of discrimination under the ADA, it is unnecessary to apply the burden-shifting framework of *McDonnell Douglas* to establish an inference of discrimination. *Rizzo v. Children's World Learning Centers, Inc.*, 84 F.3d 758, 762 (5th Cir.1996) (internal. citations omitted). "A prima facie case is not made out if the decisionmaker is unaware of the specifics of an employee's disabilities or restrictions, even if the decisionmaker has a general knowledge that a disability

exists."); *Bibbs v. Motiva Enterprises* LLC, 757 F.Supp.3d 728 (E.D. Texas Nov. 20, 2024)( citing

*Clark v. Champion Nat'l Sec., Inc.,* 952 F.3d 570, 579 (5th Cir. 2020) Such evidence must "directly

and expressly link the plaintiff's disability to a decisionmaker's choice to terminate him," rather

than show generalized knowledge about his disability and the termination. *Id.* at 580.

An employee may have a "disability" under the ADA in one of three ways. 42 U.S.C.

§12102(1). The ADA defines "disability" as:   (A) a physical or mental impairment that

substantially limits one or more of the major life activities of such individual; (B) a record of such

an impairment; or (C) being regarded as having such an impairment. *Id.* and *See Moss* 851 F.3d

413 at 417. The ADA does not explicitly define "substantially limits," but the EEOC regulations

provide the Court with guidance. "Substantially limits" means:

> (i) Unable to perform a major life activity that the average person in the general
> population can perform; or (ii) Significantly restricted as to the condition, manner
> or duration under which an individual can perform a particular  major life activity
> as compared to the condition, manner or duration under which the average person
> in the general population can perform the same major life activity. 29 C.F.R. §
> 1630.2(j)(1).

A "physical or mental impairment" is defined as "any physiological disorder or condition,

cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as

neurological, musculoskeletal, special sense organs, respiratory (including speech organs),

cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic,

skin, and endocrine[.]" 29 C.F.R. § 1630.2(h)(1). "Major life activities" include "caring for oneself,

seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning,

reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

In determining whether an individual's impairment substantially limits a major life activity,

courts are to consider the following factors: "(i) the nature and severity of the impairment, (ii) the

duration or expected duration of the impairment; and (iii) the permanent or long term impact or

the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(4). The Amended Act further provides that an impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active. *Id.* at § 1630.2(j)(1)(vii). Fifth Circuit jurisprudence is clear that "the relevant time for assessing the existence of a disability is the time of the adverse employment action." *E.E.O.C. v. Chevron Phillips Chemical Co., LP,* 570 F.3d 606, 618 (5th Cir. 2009).

In this case, the crucial question is whether Sanders was suffering an ADA disability at the time of her termination on June 28, 2023. The evidence shows that Sanders told CANO by email on March 5, 2023 that she needed to take care of some medical issues with vision and joint pain. R. Doc. 24-5. Sanders stated that she would be having surgery on her left eye on March 13, 2023 and that she would have surgery on her right eye 6-10 weeks later. *Id.* Sanders also indicated that she submitted a short-term disability form to Mutual of Omaha after discussing her joint pain with her primary care physician. R. Doc. 24-5.

On March 7, 2025, The Human Resources Director of CANO, Lori Knight who advised Sanders that her manner by email requesting medical did not comply with CANO's policy. R. Doc. 32-1 at 2. Nonetheless, CANO granted Sanders FMLA leave through May 19, 2023 and Leave Without Pay (LWOP) through May 12, 2023. R. Doc. 24-10.

On May 11, 2023, Dr. Edward Gaber, notified CANO that Dr. Thomas Francavilla, Sanders' neurosurgeon, would be in best interest to indicate when she would return to work. R. Doc. 24-3 at 2. Two weeks prior, Dr. Francavilla had ordered Sanders to complete physical therapy. R. Doc. 32-1 at 13. On May 15, 2023, Knight followed up with Sanders to confirm that she was expected to return to work the following week and inquired into any potential

accommodations Sanders may need based on the essential duties as an Interventionist. R. Doc. 24-7.

Two days later, Dr. Francavilla wrote to CANO that Sanders would not be able to return to work "until further notice" as she completes her physical therapy and evaluated for possible testing. R. Doc. 24-3 at 2. The doctor generally determined that Sanders was unable to bend, stoop, walk, and lift without extreme pain. R. Doc. 24-9. The first time the record reflects a lumbar radiculopathy diagnosis was not until June 2, 2023. R. Doc. 24-10. Dr. Francavilla completed an attending physician limitations form restricting Sanders from prolonged standing and walking, but he additionally noted that Sanders was scheduled to return to prior functioning on August 31, 2023. *Id.* On June 26, 2023, Knight advised Sanders that she had exhausted FMLA leave and all other leave options under state and federal law, and therefore her employment status would no longer active as of July 1, 2023. *Id.*

At the outset of Sander's leave, the record evidence did not clearly identify a diagnosis that restricted Sanders from engaging in a major life activity. As to Sanders' vision issues, there is no evidence suggesting any working limitation due to her eye surgery. There was seemingly general knowledge of a temporary disability, but Sanders does not explain how recovering from eye surgery constitutes a disability within the meaning of the ADA. Temporary, occasional and sporadic pain are the opposite of permanent issues that are the "touchstone of a substantially limiting impairment." *Waldrip v. Gen. Elec. Co.,* 325 F.3d 652, 654 (5th Cir. 2003). Likewise, nothing on the record indicates that CANO took an adverse employment action against Sanders because of her eye surgeries. Consequently, Sanders has not established a causal link between a claimed eye disability and an adverse employment action, and therefore, Sanders has failed to raise a genuine issue of material fact.

As to the joint pain, nothing in the record also established a medical diagnosis for joint pain at the time she sought leave. Sanders was not diagnosed with lumbar radiculopathy until after her leave had expired on May 19, 2023. Also, the evidence does not indicate that her diagnosis is a substantially limiting impairment. According to Dr. Francavilla's physician statement, he noted that there was no over instability of the spine and would provide treatment to her on an as needed basis R. Doc. 24-10. The statement also indicated that Sanders declined pain management and injection theory. *Id.*

Even though Dr. Francavilla stated that Sanders was not able to engage in prolonged standing and walking, the Court notes that mere difficulty in standing or walking is not sufficient to establish a substantial limitation. See 29 C.F.R. § 1630.2(j)(2)(i). Other courts have held that a plaintiff who has only moderate difficulty in walking may not establish a substantial impairment for summary judgment purposes. *e.g. Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1025 (5th Cir.1999) (finding that plaintiff's difficulty with walking as a result of a deformed leg did not rise to the level of a substantial impairment under the ADA); P*enny v. United Parcel Serv.*, 128 F.3d 408, 415 (6th Cir.1997) (finding that "moderate difficulty or pain experienced while walking does not rise to the level of a disability" under the ADA); *Kelly v. Drexel Univ.*, 94 F.3d 102, 106, 108 (3d Cir.1996) (finding no substantial limitation in ability to walk where plaintiff suffering from severe post-traumatic degenerative joint disease of the right hip stated that he could not walk more than a mile or so, could not jog, and had to pace himself slowly when climbing stairs); *Nedder v. Rivier Coll.*, 944 F.Supp. 111, 113–17 (D.N.H.1996) (finding at most moderate impairment where plaintiff could walk, albeit with considerable exertion and more slowly than the average person due to her obesity).

Further, a review of the ELA interventionist Job description indicates that Sanders was responsible for providing high-level literacy learning experiences to struggling readers and writers. R. Doc. 24-11. Nowhere in the description is there a suggestion that Sanders would be engaged in prolong standing and walking per the limitations or restrictions set by Dr. Francavilla. *Id.* Moreover, Dr. Francavilla indicated that Sanders should be able to return to work by August 31, 2025. *Id.* Plaintiff simply has not presented sufficient evidence that the substantial impairment of her ability to stand or walk was anything other than temporary. *See Ogborn v. United Food & Commercial Workers Union*, Local No. 881, 305 F.3d 763, 767–68 (7th Cir.2002) (holding that, because plaintiff had not identified any evidence that depression limited his ability to work either before or after one eight week episode, he had not established that his impairment was not temporary); *Plant v. Morton Int'l, Inc.,* 212 F.3d 929, 937 (6th Cir. 2000) (holding that, despite the fact that the evidence did not clearly indicate that his condition was temporary, plaintiff could not defeat a motion for summary judgment because he "was unable to come forward with any evidence that [his condition] was permanent, and the mere possibility of recurrence is not sufficient to establish substantial impairment").

The Court therefore finds that since there is no evidence of a substantially limiting impairment, Sanders has failed to establish that she had a disability, and there is no genuine issue of material fact. Therefore, Sanders' ADA claim will be dismissed with prejudice, and Defendant should be granted judgment as a matter of law.

## IV.    <u>Conclusion</u>

Accordingly,

**IT IS ORDERED** that the Defendant's **Motion for Summary Judgment (R. Doc. 24)** is

**GRANTED.**

New Orleans, Louisiana, this 9<u>th</u> day of September 2025.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

12